Slip Op. 20-56

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,** | |
| Plaintiff, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **CHU-CHIANG "KEVIN" HO, ET AL.,** | **Court No. 19-00102** |
| Defendants. | |

## <u>OPINION</u>

[Granting plaintiff's Motion for Extension of Time for Service and denying defendant's Motion to Quash Service of Process and to Dismiss Pursuant to USCIT Rules 12(b)(2) and 12(b)(5).]

Dated: April 27, 2020

<u>William George Kanellis</u>, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C. for plaintiff.  With him on the brief was <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Robert E. Kirschman, Jr.</u>, Director and <u>Patricia M. McCarthy</u>, Assistant Director.

<u>Elon A. Pollack</u> and <u>Kayla R. Owens</u>, Stein Shostak Shostak Pollack & O'Hara, LLP of Los Angeles, CA for defendant.

Reif, Judge: In this action, the United States Government ("Government" or

"plaintiff") requests that the United States Court of International Trade ("USCIT" or

"CIT") extend the service period to effect service of the complaint and summons upon

defendant Chu Chiang "Kevin" Ho from September 19, 2019, to October 16, 2019 — the

date that he was physically served with the complaint and summons.  Plaintiff's Motion

for Extension of Time for Service, ECF No. 6 ("Pl. Mot. Ext.").  In response to plaintiff's

Motion for Extension of Time for Service, defendant moves to quash service of process

and to dismiss plaintiff's complaint against him in his individual capacity.  Defendant's

Motion to Quash Service of Process and to Dismiss Pursuant to USCIT Rules 12(b)(2)

and 12(b)(5), ECF No. 7 ("Def. Mot. Q. Dis.").  The CIT has jurisdiction to entertain this

action pursuant to 28 U.S.C. § 1582.

For the reasons stated below, the court denies defendant's Motion to Quash

Service of Process and to Dismiss this Action and grants plaintiff's Motion for Extension

of Time for Service.

## BACKGROUND

On June 21, 2019, the Government filed a complaint naming Chu-Chiang "Kevin"

Ho, Wintis Corporation, Ship Communications, Inc., Aelis Nova, and Maderdove, LLC

as defendants, jointly and severally liable for alleged violations of 19 U.S.C. § 1592.  Pl.

Mot. Ext. at 2.  The Government was on notice that, pursuant to USCIT Rule 4(l), the

Government had 90 days from the filing of the complaint — that is, until September 19,

2019 — to effect service on Mr. Ho.  The stakes were high; the Government had no

margin for error or delay because the Government had run down the clock on the

statute of limitations.  The Government would be time-barred from refiling if failure to

effect service within the 90-day period resulted in the dismissal of this action.

Nine days later, on June 30, 2019, the Government attempted to effect service on Mr. Ho through a professional process server.  Timothy Ault, one of the Government's retained process servers, declared that he had visited Mr. Ho's residence on June 30, 2019, and effected service upon him under California law.  *See United States v. Ho*, CIT No. 19-00038 ("*HO I*"), ECF No. 14, Ex. 1 at ¶ 7.  However, this declaration would later prove to be incorrect because Mr. Ho was, in fact, out of the country on that day.  Pl. Mot. Ext. at 2 ("U.S. Customs and Border Protection (CBP) retrieve[d] records relating to Mr. Ho's international travel . . . indicat[ing] that [he] was . . . out of the country]").  Thus, service as prescribed by Rule 4 was not effected in accordance with California law.

The Government did not learn about its faulty service until August 26, 2019, when Mr. Ho filed an Opposition to the Government's Sur-Reply in the companion case, *HO I*.  In his Opposition filing, Mr. Ho provided declarations and evidence that he and his family were out of the country on June 30, and that no one was at their residence on that date.  *See HO* I, ECF No. 16, Ex. 1.  After learning of the possibility that Mr. Ho was, in fact, out of the country on June 30, 2019,[1] the Government waited one month, until September 26, seven days after the 90-day period expired under USCIT Rule 4(I), to attempt to serve Mr. Ho again.  Def. Mot. Q. Dis. at 7.  Travel records indicate that

---

[1] The Government does not specify when it was finally able to corroborate Mr. Ho's absence from the country on June 30, 2019.  Nor does the Government specify when it learned of his subsequent absences from the country.  The Government states only that, "Government counsel did not have real-time records of Mr. Ho's travel, and only learned of his subsequent absence from the United States after the fact."  Pl. Op. Mot. Dismiss at 4, n.3.

Mr. Ho was present in the United States during the last 15 days of the 90-day period, *see* Pl. Mot. Ext. at 4; Def. Mot. Q. Dis. at 7, but the Government made no attempt to serve Mr. Ho during this time.  *HO* 1, ECF No. 6, Ex. 2.

The Government restarted its attempts to serve Mr. Ho on September 26, 2019, then suspended these efforts three days later after learning that Mr. Ho had left the country on September 24, 2019.  Pl. Mot. Ext. at 3–4; *see also* ECF No. 6, Ex. 1 at 2. The Government resumed its service attempts on October 12, 2019, the day after the Government learned (from CBP) that Mr. Ho had returned to the United States on October 6, 2019.  Pl. Mot. Ext. at 4.  The Government continued its attempts until Mr. Ho was personally served with the complaint and summons at his home on October 16, 2019.  *Id.*  The next day, the Government filed its Motion for Extension of Time for Service, nearly a month after the 90-day period had expired.

In its motion, the Government seeks a 27-day enlargement of the 90-day period for service of process, to extend the Government's deadline for effecting service on defendant from September 19, to October 16, 2019.  *See* Pl. Mot. Ext. at 1.  In response, defendant requests that the court quash service of process and dismiss this action for lack of personal jurisdiction over defendant.  The Government argues that because good cause exists to extend the service period, the court is required to provide the extension.  Alternatively, the Government argues that even in the absence of good cause, the court should, in its discretion, order that service has been effected due to Mr. Ho's constructive notice of the complaint.  *Id.*

In response to plaintiff's Motion for Extension of Time for Service, defendant

moves to quash service of process and to dismiss plaintiff's complaint against him in his

individual capacity.  Defendant's Motion to Quash Service of Process and to Dismiss

Pursuant to USCIT Rules 12(b)(2) and 12(b)(5) ("Def. Mot. Q. Dis."), ECF No. 7 at 1.

Defendant argues that, contrary to the Government's assertions, good cause does not

exist to extend time for the Government to serve Mr. Ho.  *Id.* at 7.  Defendant also

argues that the factors that a court considers for extended service in the absence of

good cause further support dismissal.  Defendant's Reply to Plaintiff's Opposition ("Def.

Rep."), ECF No. 10 at 6.

## LEGAL FRAMEWORK

### I.   USCIT Service of Process Rules

USCIT Rule 4(l) governs the time limits for service of process in this action.  The

rule provides, in relevant part, that:

> If a defendant is not served within 90 days after the complaint is filed, the
> court — on motion or on its own after notice to the plaintiff — must dismiss
> the action without prejudice against that defendant or order that service be
> made within a specified time.  But if the plaintiff shows good cause for the
> failure, the court must extend the time for service for an appropriate
> period.

*See also* Fed. R. Civ. P. 4(m).[2]  Thus, the CIT *must* grant more time to complete service

if the plaintiff demonstrates good cause for failing to serve defendant within the 90-day

period.  *See* USCIT Rule 4(l).  In addition, the CIT *may* grant an extension even absent

---

[2] The text of USCIT Rule 4(l) is identical to that of Rule 4(m) of the Federal Rules of
Civil Procedure, except for conforming changes required by differences in the
numbering of the two sets of rules.

good cause, as a matter of the court's discretion.  *See id.*; *United States v. Rodrigue*, 33

CIT 1453, 1471, 645 F. Supp. 2d 1310, 1329 (2009) (*citing Henderson v. United States*,

517 U.S. 654, 662–63 (1996), and the corollary Federal Rule of Civil Procedure 4(m),

Advisory Committee Note, 1993 Amendments).

## II.   Extension of Time for "Good Cause"

The Government bears the burden of establishing "good cause" for its failure to

effect service within the 90-day period.  *See* Wright & Miller, Federal Practice and

Procedure Section 1137.  That burden is heavy.  *See, e.g.*, *Beauvoir v. U.S. Secret

Service*, 234 F.R.D. 55, 56 (E.D.N.Y 2006) (stating that "[a] party seeking a good cause

extension bears a heavy burden of proof") (quotation omitted).  This Court has

interpreted "good cause" in Rule 4(l) to mean "reasonable efforts," or "those efforts

reasonably calculated to effect service within" the prescribed number of days.  *United

States v. General Int'l Mktg Grp.*, 14 CIT, 545, 549, 742 F. Supp. 1173, 1176 (1990) ("a

fair standard of good cause is one which requires people to show behavior consistent

with the recognition that a 120-day deadline exists."); *United States v. World

Commodities Equip. Corp.*, 32 CIT 294 (2008).  These applications of Rule 4(l) comport

with other formulations of the standard for good cause across other federal courts,

which generally agree on the requirement that the serving party show "real diligence."[3]

---

[3] *See, e.g.*, *Habib v. General Motors Corp.*, 15 F.3d 72, 74 (6th Cir. 1994) (noting that
"[t]o demonstrate good cause, other courts have held that a plaintiff may . . . show that
he/she made a reasonable and diligent effort to effect service"); *Resolution Trust Corp.
v. Starkey*, 41 F.3d 1018, 1022 (5th Cir. 1995) (stating that, "in short, one is required to
be diligent in serving process, as well as pure of heart, before good cause will be
found"); *Shuster v. Conley*, 107 F.R.D. 755, 757 (W.D. Pa. 1985) (stating that "[a] court

Further, this Court and other federal courts have held that when the statute of limitations is nearing expiration, "'good cause' requires that a plaintiff exert such efforts at service as are consistent with a recognition that [90] days may otherwise mark the death of the action." *Rodrigue*, 645 F. Supp. 2d at 1323-24 (citations omitted); *see also Tuke v. United States*, 76 F.3d 155, 156 (7th Cir. 1996).  In situations like these, the plaintiff "must show *meticulous efforts* to comply with the rule" to receive the benefit of the "good cause" exception.  *Rodrigue*, 645 F. Supp. 2d at 1324 (emphasis in original) (citations omitted).[4]  Ultimately, the plaintiff should "[t]reat the [90] days with the respect reserved for a time bomb."  *Id.* (citations omitted).

## III.    Extension of Time Absent Good Cause, As a Matter of Discretion

Under Rule 4(l), a court may also, in its discretion, grant an extension of time to effect service even in the absence of good cause.  A majority of circuits have "found that the plain language of Rule 4(m)[5] broadens a district court's discretion by allowing it to extend the time for service even when plaintiff fails to show good cause."  *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).  As long as "a district court properly sets out the relevant law and makes no factual findings that are clearly erroneous," the court's

---

will not grant an extension [for service of process] where the plaintiff has not demonstrated a reasonable effort to effect service prior to the running of the 120-day period").

[4] *See also Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) ("The 'good cause' provision of Rule 4(j) should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule"); *Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 176 (10th Cir. 1996) ("The plaintiff who seeks to rely on the good cause provision must show meticulous efforts to comply with the rule").

[5] As discussed above, USCIT Rule 4(m) is the FRCP-corollary of CIT Rule 4(l).

decision to grant or refuse an extension of time will be overturned on appeal only if its

decision is "arbitrary or unreasonable."  *See Gile v. United Airlines, Inc.*, 95 F.3d 492,

495 (7th Cir. 1996); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir.

1995).

In the past, this Court has considered several factors in determining whether to

extend the time for service of process even in the absence of a showing of good cause.

*Rodrigue*, 645 F. Supp. 2d at 1329-30.  Those factors have included:

> [W]hether the statute of limitations would bar the refiled action; whether
> the defendant is evading service or concealed a defect in attempted
> service; whether the defendant had actual notice of the complaint; whether
> the defendant would be prejudiced by the extension of time; whether
> service of process was eventually achieved, and, if so, when; and whether
> the plaintiff sought a timely extension of time.

*Id*.  Accordingly, these factors guide the court's determination here.

## DISCUSSION

Toward the beginning of the 2002 movie, *Serving Sara*, Tony (played by Vincent

Pastore) calls Sara Moore (Elizabeth Hurley) from a payphone on a Manhattan street to

alert her that a rival process server, Joe Tyler (Matthew Perry), is on the way up to her

apartment.

Tony, seeking to foil Tyler's service of divorce papers on Sara says to her:

"Listen up.  If I were you, I'd get the hell out of your apartment right now."

Sara: "Who is this?"

Tony: "Let's just say, 'a friend'.  Look, some [guy] is on his way up to serve you

papers.  He's going to say he's delivering flowers."

Sara: "Papers?  What, is this about my parking tickets?"

Tony: "No, no, no, no.  It's a lot bigger than that."

Sara: "Look, I really don't have any idea what you're talking about, so…."

Tony: "Hey, lady, when is getting served papers any good, huh?  Don't be stupid, hang up and get out."[6]

\* \* \*

Contrary to the comical portrayal in *Serving Sara*, "[p]roper service of process is not some mindless technicality, but — rather — a critical part of a lawsuit." *Rodrigue*, 645 F. Supp. 2d at 1320 (citations omitted).  "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over [a] defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007) (citations omitted).  The Government's motion for extension of time and defendant's motions to quash service and to dismiss this action are analyzed below, in turn.  As discussed there, the Government has failed to show good cause for its failure to serve defendant within the 90-day period for effecting service of process.  However, an extension of time is warranted despite the absence of good cause because a review of the relevant factors counsels in favor of a discretionary extension.  The requested extension of time is, therefore, granted, thus effecting service of process and establishing personal jurisdiction over defendant.

---

[6] SERVING SARA (Reginald Hudlin/Mandalay Pictures 2002).

### I. Extension of Time for "Good Cause"

In this case, the Government was on notice that, pursuant to Rule 4(l), the Government had 90 days from the filing of the complaint — that is, until September 19, 2019 — to effect service on Mr. Ho.  The failure to provide specifics for this period is particularly striking given that the Government has provided a detailed timeline about its service efforts in relation to CBP notifications regarding Ho's travels that the Government received in late September and early October.[7]  The Government was also on notice that it would be time-barred from refiling if failure to effect service within the 90-day period resulted in the dismissal of this action because it had run down the clock on the statute of limitations.

The Government should have acted *meticulously* and in a manner that reflected "a recognition that [90] days [could] otherwise mark the death of the action;" however, the Government did not.  *Rodrigue*, 645 F. Supp. 2d at 1323–24 (citations omitted). Rather, it attempted to serve defendant only *a single time* prior to the 90-day deadline, and the Government did so through a process server whose reliability was contested given developments in the companion case, *HO I*.[8]  Even so, this court does not need to

---

[7] For example, the Government recounts that "[a]ttempts to serve Mr. Ho [at the end of September 2019] were suspended when Government counsel learned [from the CBP] that Mr. Ho had left the country again, but resumed on October 12, the day after counsel learned [from the CBP] that Mr. Ho had most recently returned to the United States [on October 6, 2019]."  Pl. Mot. Ext. at 4.

[8] For example, on April 8, 2019, because Mr. Ault served defendant with two copies of the complaint at his residence but failed to serve a copy of the summons, service was not effected in accordance with California law.  *See HO I*, ECF No. 7 at 3.  Later, on June 1, 2019, Mr. Ault again attempted service at Mr. Ho's residence.  *See HO I*, ECF No. 8 at 5.  His initial affidavit, submitted with defendant's Opposition to the Motion to

decide whether the Government's reliance upon Timothy Ault was reasonable in its

attempt to serve Mr. Ho on June 30, 2019.  The Government's relative inaction after

learning on August 26, 2019, of its potential error (through Mr. Ho's Opposition to the

Government's Sur-Reply in the companion case) undermines the Government's

argument for "good cause."

The Government failed to make any service attempts in the final three weeks of

the 90-day service period after becoming aware of its potential error.  Travel records

indicate that Mr. Ho was back in the United States from September 4, 2019, through the

end of the 90-day period; thus, the Government had more than two weeks to serve Mr.

Ho at his U.S. residence before the 90-day period expired.

The Government's failure to explain the reason that it did not carry out further

service attempts until more than a week after the 90-day period expired is telling.  In

Plaintiff's Opposition to Defendant's Motion to Dismiss, ECF No. 9 ("Pl. Op. Mot.

Dismiss"), the Government vaguely states that, "In September 2019, when counsel

confirmed that Mr. Ho had been out of the country on June 30, he re-engaged the

Government's process service agency to resume attempts at service."  Pl. Op. Mot.

Dismiss at 17.  The Government never specifies on exactly which day in September the

Government was able to confirm with CBP that Mr. Ho had been out of the country on

June 30, 2019.  But if the Government received confirmation of this fact from CBP prior

---

Dismiss in *HO I*, "made no mention that Mr. Ho refused service or closed the door in Mr. Ault's face."  But, now that defendant contends that he was not served on that date (because defendant claims he was not at home at the time of alleged service), Mr. Ault is now "claim[ing] that Mr. Ho evaded service" by closing the door in Mr. Ault's face, a detail that did not appear in his initial affidavit.  *See HO I*, ECF No. 16 at 6-7.

to the expiration of the 90-day period and *still* did not attempt to serve him at his U.S. residence, then the Government did not act *meticulously* and in a manner that reflected "a recognition that [90] days [could] otherwise mark the death of the action." *Rodrigue*, 645 F. Supp. 2d at 1323–24 (citations omitted).

Assuming *arguendo* that not receiving confirmation from CBP until *after* the 90-day period would excuse the Government's failure to restart service attempts until September 26, 2019, the burden would still be on the Government to provide such evidence. The Government has not done so.

But even a late notification from CBP, substantiated by evidence, could not save the Government's attempt to show "good cause." When Mr. Ho's Opposition filing was made in *HO I* in late August, the Government should have become aware that if Mr. Ho's claim of being out of the country on June 30, 2019, were, in fact, true, then service would not actually have been effected pursuant to Rule 4(l) and California law.[9] The Government also was on notice that the expiration of the 90-day period was a little more than three weeks away. This court need not query the Government's reasons for wanting to confirm Mr. Ho's whereabouts on June 30, 2019, *see* Pl. Mot. Ext. at 2, to conclude that sitting on its hands while waiting for confirmation from CBP as the deadline approached (and, soon thereafter, expired) was not meticulous.

---

[9] Mr. Ho provided declarations and evidence that he and his family were out of the country on June 30, 2019, and that no one was at their home on that date. *See HO I*, ECF No. 16, Declarations of Kevin Ho, Tzuling Liu, Rex Chu-Chun Ho, and Ray Marmash.

In conclusion, the Government has not shown "good cause" for its failure to serve defendant within the 90-day period following the filing of the Government's complaint. Therefore, the Government is not entitled – on this basis – to an extension of time to effect service of process.

## II.     Extension of Time Absent Good Cause, As a Matter of Discretion

Although "good cause" does not exist, the balance of factors here militates in favor of the court exercising lenity and granting the Government's motion for an extension.  The court reaches its conclusion based on: (1) the severe prejudice to the Government if it were not able to refile the action; (2) defendant's actual notice of the complaint; (3) the fact that service was eventually effected; (4) the lack of significant prejudice to defendant; and, (5) the absence of a protracted delay in motioning for an extension.

With respect to the first factor, in the present case, denying the requested extension of time will severely prejudice the Government because the statute of limitations for refiling the action expired during the 90-day period.  The relevant Advisory Committee Note to the Federal Rules of Civil Procedure expressly identifies whether "the applicable statute of limitations would bar the refiled action" as a factor that justifies granting an extension of time even without good cause.  Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments.  Here, if the court denies the Government's motion for an extension of time, the statute of limitations will prevent the Government from refiling, resulting in severe prejudice to the Government's case on technical grounds.  As a result, the Government would lose entirely the opportunity to bring its

case.  The fact that the "technical default [may have been] the result of pure neglect on

the plaintiff's part" does not render the prejudice any less significant.  *Zapata v. City of

New York*, 502 F.3d 192, 198 (2d Cir. 2007).

A second key factor that weighs in favor of granting the requested extension of

time is that the defendant had actual notice of the complaint.  Prior decisions of this

Court and other federal courts hold that service of process provisions should be liberally

construed to effectuate service when actual notice has been received by defendant.

*United States v. Zatkova*, 791 F. Supp. 2d 1305, 1213 (CIT 2011).  *See also United

Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.

1984) ("Rule 4 is a flexible rule that should be liberally construed so long as a party

receives sufficient notice of the complaint[.]").  Here, defendant had actual notice of the

complaint in *HO II* as early as August 26, 2019, when defendant filed its reply in *HO I*,

notifying the Government of its defective service.[10]  *See HO I*, ECF No. 16.  In other

words, Mr. Ho was "plainly aware that this lawsuit [had] been filed" before the 90-day

period expired.  Pl. Mot. Ext. at 4.

A third factor that weighs in favor of granting the motion for an extension of time

is that service of process was eventually achieved.  The Government was able to effect

service of process in mid-October, less than one month after the 90-day period expired.

---

[10] The Government also claims that defendant had actual notice of the complaint on the
basis that the Government's process server left a copy of the complaint and summons
on his front doorstep.  Pl. Mot. Ext. at 9-10.  However, this apparent action alone is
insufficient to establish actual notice.  The Government provides no evidence that
defendant ever *actually received*, let alone opened or read, the complaint and summons
left on his front doorstep.  *Cf. Rodrigue*, 645 F. Supp. 2d 1310, 1333.

This Court has at times refused discretionary extensions even where service was

effected less than one month after the service period ended.  However, in those cases,

defendants typically did not have any notice of the complaint during the service period.

*See, e.g.*, *United States v. World Commodities*, 32 CIT at 297.  In this case, defendant,

by his own admission, had notice of the complaint during the service period.  Pl. Mot.

Ext. at 4.  Further, not only did the Government eventually effect service, but the fact

that defendant "was out of the country for 46 of the possible 90 days of service"

dramatically reduced the number of possible days the Government had to effect service,

further counseling toward a discretionary extension.  Pl. Mot. Ext. at 4.

        The court's decision to grant a discretionary extension is based primarily on the

factors discussed above; however, "whether the defendant is evading service or

concealed a defect in attempted service" may also be relevant.  *Rodrigue*, 645 F. Supp.

2d at 1329-30.  The Government alleges evasion and concealment on the part of

defendant as factors weighing in favor of the court granting an extension.  In its brief,

the Government notes "indicia of evasion" surrounding the service attempts at

defendant's residence, Pl. Mot. Ext. at 3, as well as alleges a "history of evasion and

prevarication with respect to service in *HO I*" on the part of Ho.  *Id.* at 4.  However,

these claims of evasion — whether credible or not — are immaterial to the service issue

presented in this case.  The evidence of evasion put forth by the Government refers to

alleged conduct in the companion case, *HO I*, or relates to service attempts *after* the 90-

day period expired.  *See* ECF No. 6, Ex. 1 at 1-2.  Neither informs the court's

assessment of whether defendant evaded service during the 90-day period in this case,

and defendant's travel outside of the United States does not in itself support a finding of evasion.

As established throughout the record, defendant frequently travels to China and Taiwan for business, and as stated elsewhere by this Court, "[t]he mere fact that a plaintiff experiences difficulty in effecting service of process does not mean that the defendant is guilty of evasion." *Rodrigue*, 645 F. Supp. 2d at 1332.  Absent some *affirmative* evidence of evasion, the court will not presume that defendant engaged in evasion during the 90-day period merely because the Government had difficulty locating him.  *Cf. id; see also World Commodities*, 32 CIT at 298 (although there the court examined the assertions of evasion in the context of "good cause" analysis).  Still, absence of evasion is by no means dispositive for the analysis.  The court finds that the lack of evasion here does not outweigh the aforementioned factors.  As the above analysis makes clear, there is ample reason to support granting the extension under the circumstances.

The balancing factors approach adopted by this Court in the past also calls for the court to weigh the potential prejudice toward the Government if the extension were not to be granted against the potential prejudice to defendant were the extension to be granted.  This Court has noted that a defendant may be "harmed by a generous extension of the service period beyond the limitations period for the action." *Zapata*, 502 F.3d at 198.  In this case, the defendant has not shown "any actual harm to its ability to defend the suit as a consequence of the delay in service." *Coleman v. Milwaukee Bd of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002).  The harm to

defendant is not substantial; the extension requested by the Government is modest and fewer than 30 days.  As a consequence, the court determines that the prejudice against defendant is not significant enough to outweigh the factors that counsel in favor of granting the Government's motion for an extension.

A final factor that the Court considers in determining whether to grant a discretionary extension is whether Plaintiff timely sought an extension of time. *Rodrigue*, 645 F. Supp. 2d at 1329-30.  When service is effected "within a matter of days, or even weeks," *Id.* at 1333, then the Court does not consider the delay so substantial as to warrant dismissal of the action.  Here, the Government sought an extension of time less than a month after the 90-day period expired.  Moreover, since defendant had actual notice of the complaint, the court attaches less weight to this factor: a motion was not necessary to put defendant "on notice."  *Cf. Rodrigue*, 645 F. Supp. 2d at 1333 (where the Government did not effect service of process on one defendant until more than five months after the service period and where another defendant had still not been served a full year after the expiration of the service period). Accordingly, absent other compelling reasons to dismiss the Government's motion for an extension of time, the lack of a timely filing does not shift the balance in favor of dismissal.[11]  In sum, the factors identified by this Court in *Rodrigue* support a discretionary extension here.  645 F. Supp. 2d 1310.

---

[11] Further, the court takes note that the Government's delay here represented a strategic decision to achieve service, *See* Pl. Op. Mot. Dismiss at 10, a decision that, based on the record before the court, was not unwarranted.  The Government then promptly filed its motion once service was effected.

The decision to grant this extension is within the court's discretion, and in exercising such discretion, it is prudent to consider the practice of other federal courts. This analysis is consistent with the practice of most other federal courts.  *See Coleman*, 290 F.3d 932.  As the court noted in *Coleman*, "the fact that the balance of hardships favors the plaintiff does not *require* the . . . judge to excuse the plaintiff's failure to serve the complaint and summons within the [90] days provided by the rule."  *Id.* at 934 (emphasis supplied).  The *Coleman* court instructs:

> Where . . . the defendant does not show any actual harm to its ability to defend the suit as a consequence of the delay in service, where indeed it is quite likely that the defendant received actual notice of the suit within a short time after the attempted service, and where moreover dismissal without prejudice has the effect of dismissal with prejudice because the statute of limitations has run since the filling of the suit . . . most district judges probably would exercise lenity and allow a late service, deeming the plaintiff's failure to make timely service excusable by virtue of the balance of hardships.

290 F.3d at 934.  Most district judges would exercise lenity, *id.*, and the court here takes notice of this practice.

As noted, the court concludes that the balance of factors — prejudice to the Government, prejudice to defendant, actual notice, whether service was eventually achieved, and, whether a timely extension was sought — weighs in favor of granting an extension.  The court thus grants this extension, effecting service of process and establishing personal jurisdiction over defendant.

## CONCLUSION

For the reasons stated above, defendant's Motion to Quash Service of Process and to Dismiss this Action is denied, and plaintiff's Motion for Extension of Time for Service is granted.

 /s/ Timothy M. Reif
Timothy M. Reif, Judge


Dated: April 27, 2020
       New York, New York